STEVEN C. MITCHELL, ESQ., SBN 124644
LEO R. BARTOLOTTA, ESQ., SBN 186860
MATTHEW K. GOOD, ESQ., SBN 226962
GEARY, SHEA, O'DONNELL, GRATTAN & MITCHELL, P.C.
37 Old Courthouse Square, Fourth Floor
Santa Rosa, California   95404
Telephone:  (707) 545-1660
Facsimile:   (707) 545-1876

Attorneys for Defendants and Third Party Plaintiffs,
COUNTY OF SONOMA, BILL COGBILL, SONOMA COUNTY
DEPUTY SHERIFF JOHN MISITA, SONOMA COUNTY DEPUTY
SHERIFF JIM RYAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JEREMIAH CHASS, MARK CHASS, YVETTE CHASS, and I.C., a minor, by and through his Guardian Ad Litem, YVETTE CHASS, | CASE NO.:  CV 08 0111 MMC |
| Plaintiffs, | THIRD PARTY COMPLAINT (F.R.C.P. Rule 14) |
| v. | |
| COUNTY OF SONOMA, BILL COGBILL, in his individual capacity and in his official capacity as Sheriff for the COUNTY OF SONOMA, SONOMA COUNTY DEPUTY SHERIFF JOHN MISITA, SONOMA COUNTY DEPUTY SHERIFF JIM RYAN, and DOES 1 through 50, | |
| Defendants and Third Party Plaintiffs, | |
| v. | |
| SANTA ROSA MEMORIAL HOSPTIAL, | |
| Third Party Defendants. | |

# THIRD PARTY COMPLAINT FOR INDEMNITY

1. Plaintiffs, ESTATE OF JEREMIAH CHASS, MARK CHASS, YVETTE CHASS, and I.C., a minor, by and through his Guardian Ad Litem, YVETTE CHASS ("Plaintiffs"), filed a complaint in the above action against Defendants COUNTY OF SONOMA, BILL COGBILL, in his individual capacity and in his official capacity as Sheriff for the COUNTY OF SONOMA, SONOMA COUNTY DEPUTY SHERIFF JOHN MISITA, and SONOMA COUNTY DEPUTY SHERIFF JIM RYAN ("Defendants" or "Third Party Plaintiffs"), alleging claims under 42 U.S.C. Section 1983, and claims under California State law for wrongful death and negligent infliction of emotional distress. Defendants deny said allegations as set forth in their Answer.

2. Third Party Defendant, SANTA ROSA MEMORIAL HOSPITAL ("Hospital"), at all relevant times, was, and is a California corporation, doing business in the State of California, County of Sonoma, and was operating as a hospital pursuant to a license duly issued by the California State Department of Health. Hospital maintains and operates an emergency room in the City of Santa Rosa, California.

## FACTUAL ALLEGATIONS

3. Third Party Plaintiffs allege on information and belief, that on March 11, 2007, Plaintiff, Yvette Chass, contacted Santa Rosa Memorial Hospital and spoke with a Hospital employee who was acting in the role as the intake coordinator for the acute psychiatric unit of Santa Rosa Memorial Hospital. Yvette Chass was contacting Santa Rosa Memorial Hospital to report her concerns regarding the mental stability of her minor son, Jeremiah Chass.

4. Third Party Plaintiffs allege on information and belief, that at approximately 10:35 p.m. on March 11, 2007, Yvette Chass told the intake coordinator that Jeremiah Chass was having a "psychotic break". Yvette Chass communicated to the intake coordinator that Jeremiah Chass stated that he was going to die at 1 a.m. and that Yvette Chass would die at 1 a.m. that night. Yvette Chass then requested that the intake coordinator speak with Andy Prokopis, PhD., a family friend and psychologist, who had recent contact and communication with Jeremiah Chass. The intake coordinator agreed to speak with Dr. Prokopis.

5. Third Party Plaintiffs allege on information and belief, that at approximately 10:40 p.m. on

LAW OFFICES OF GEARY, SHEA, O'DONNELL GRATTAN & MITCHELL P.C.

- 2 -
Third Party Complaint

1 March 11, 2007, the intake coordinator spoke with Dr. Prokopis regarding Jeremiah Chass'
2 psychological status. Dr. Prokopis provided the intake coordinator with a history of Jeremiah
3 Chass' condition, described their recent interactions, including a meeting with Yvette Chass that
4 day, and a telephone conversation between Dr. Prokopis and Jeremiah Chass that occurred that
5 evening. According to Dr. Prokopis, he reported to the intake coordinator that Jeremiah Chass was
6 exhibiting signs and symptoms of psychotic behavior, including statements by Jeremiah Chass that
7 he was going to die at 1 a.m. that night and that his mother would die, incoherent and delusional
8 descriptions of his "Formula for the Universe," rapid speech patterns, delusional references to other
9 voices speaking to him, anxious and emotional tone, and Jeremiah's apparent focus on internal
10 stimulation. Dr. Prokopis advised the intake coordinator that he believed Jeremiah Chass required
11 emergency care and an immediate psychological assessment, as Jeremiah Chass was expressing
12 suicidal ideation and stating that his mother would die that evening.

    6. Despite Dr. Prokopis' apparent report of Jeremiah Chass' suicidal and possible homicidal ideation, psychotic behavior, the other information set forth above, and statements that his mother would die that night, both Mrs. Chass and Dr. Prokopis contend that the intake coordinator advised them that they should wait until the morning to have Jeremiah Chass evaluated and treated, and advised that he would likely not be seen at all in the emergency room even if they brought him in that night, as Dr. Prokopis was urging.

    7. Third Party Plaintiffs allege on information and belief, that based upon the intake coordinator's statements to Dr. Prokopis and Yvette Chass that Jeremiah Chass would not be provided any medical or psychological services at the Hospital on the evening of March 11, 2007 or the early morning of March 12, 2007, if Yvette Chass was to bring her son to Santa Rosa Memorial Hospital emergency room, Yvette Chass did not take Jeremiah Chass to the emergency room for medical care or a psychological evaluation.

    8. At all times herein mentioned, the intake coordinator was the agent, servant and employee of Hospital, and as such, was acting within the time, place, purpose and scope of said employment and agency, and Hospital ratified, authorized and approved the acts of the intake coordinator. Additionally, at all times mentioned herein, the intake coordinator was licensed as a psychologist

under the State of California

## ALLEGATIONS REGARDING THIRD PARTY LIABILITY

### (Medical Malpractice – Claim for Indemnity)

9.  Santa Rosa Memorial Hospital, by and through their employee and agent, had a duty and obligation to provide medical and psychological care in a manner consistent with the standard of care in the community, including the duty to provide medical and psychological advice to individuals that seek emergency services from Hospital. Hospital also had a duty and obligation to provide emergency care and treatment pursuant to California Health and Safety Code Section 1317.

10. On or about March 11, 2007, Yvette Chass sought medical and psychological care for her minor child, Jeremiah Chass, by contacting Hospital and speaking with the intake coordinator. The intake coordinator, as an employee and agent of Hospital, undertook to provide medical and psychological care, advice and consultation to Yvette Chass, and provided medical and psychological advice through her consultation with Yvette Chass and Dr. Prokopis, thereby establishing a duty and obligation to provide such professional advice through the consultation in a manner that was consistent with the standard of care in the community. Further, the intake coordinator had a duty to provide emergency care pursuant to California Health and Safety Code Section 1317.

11. On or amount March 11, 2007, Hospital, by and through their employee, the intake coordinator, failed to comply with the standard of care in the community and failed to comply with the requirements of California Health and Safety Code Section 1317, in that, after being advised by Yvette Chass and Dr. Prokopis that Jeremiah Chass was exhibiting symptoms of psychosis, including suicidal and possible homicidal ideation and statements that Yvette Chass would die that night, the intake coordinator negligently advised Yvette Chass to wait until the following morning to bring Jeremiah Chass to the emergency. Yvette Chass, after consultation with the intake coordinator, and relying on the advice and professional opinions of the intake coordinator, did not take Jeremiah Chass to the emergency room on the night of March 11, 2007.

12. As a result of the negligence of Hospital and their employee and agent, the intake coordinator, Jeremiah Chass was not taken to the emergency room and did not receive a

psychological evaluation or assessment. Jeremiah Chass' psychological condition predictably continued to deteriorate through the evening of March 11, 2007, and the early morning of March 12, 2007. Jeremiah Chass, on the morning of March 12, 2007, became delusional and violent. Jeremiah Chass assaulted his brother and threatened to kill his brother with a knife. In response to this assault and threat to kill his brother, Yvette Chass called 911 and requested assistance from Third Party Plaintiffs. Third Party Plaintiffs responded to Yvette Chass' request for emergency services and were confronted with Jeremiah Chass in a violent, delusional, and homicidal state, threatening to kill his brother, and armed with a knife. During the evolving struggle, and in response to the threat of great bodily harm or death to themselves and others, the officers justifiably used deadly force against Jeremiah Chass. Plaintiffs have filed a complaint for damages against Third Party Plaintiffs as a result of said incident..

13. Had the intake coordinator complied with the standard of care and advised Yvette Chass that Jeremiah Chass should be brought to the emergency room for assessment, Jeremiah Chass would have been transported to the emergency room and would have received treatment and/or services that would have prevented his further mental decline. Further, had Jeremiah Chass received medical and psychological treatment and/or services at the Hospital emergency room, he would not have assaulted his brother, or threatened to kill his brother on the morning of March 12, 2007. The events that occurred on the morning of March 12, 2007, including the violent behavior of Jeremiah Chass and the use of force against Jeremiah Chass were a foreseeable consequence of Hospital's failure to comply with the standard of care.

14. Additionally, Third Party Plaintiffs allege on information and belief, that Santa Rosa Memorial Hospital had a duty to provide the intake coordinator with appropriate training and guidance regarding her duties when responding to calls from individuals in the community. Further, Santa Rosa Memorial Hospital had a duty to prepare and maintain policies and procedures regarding the duties and obligations of the acute psychiatric unit's intake coordinator that complied with the standard of care in the community.

15. Third Party Plaintiffs allege, on information and belief, that Santa Rosa Memorial Hospital failed to provide the intake coordinator with appropriate training and guidance regarding

LAW OFFICES OF
GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.

- 5 -
Third Party Complaint

her duties as the intake coordinator for the acute psychiatric unit, and failed to maintain policies and procedures regarding the duties and obligations of the acute psychiatric unit's intake coordinator.

16. As a result of Santa Rosa Memorial Hospital's failure to provide the intake coordinator with appropriate training and guidance regarding her duties as the intake coordinator for the acute psychiatric unit, and their failure to maintain policies and procedures that complied with the standard of care in the community, the intake coordinator failed to provide guidance, advice and counsel to Yvette Chass that complied with the standard of care in the community. As a result of the negligent guidance, advice and counsel of the intake coordinator, Yvette Chass failed to seek emergency care for Jeremiah Chass, resulting his eventual death. The events that occurred on the morning of March 12, 2007, including the violent behavior of Jeremiah Chass and the use of force against Jeremiah Chass were a foreseeable consequence of Hospital's failure to comply with the standard of care.

17. Third Party Plaintiffs contend that, as between Third Party Plaintiffs and third party defendant Hospital, responsibility, if any, for the damages claimed by Plaintiffs rest entirely or partially on Hospital. As a result, Hospital is obligated to fully or partially indemnify Third Party Plaintiffs for any sums that they may be compelled to pay as the result of any damages, judgment, or other awards recovered by Plaintiffs against Third Party Plaintiffs.

18. Third Party Plaintiffs desire a determination of the respective rights and duties of the parties with respect to the damages claimed by Plaintiffs. In particular, Third Party Plaintiffs desire a determination of the comparative liability of Third Party Plaintiffs and Hospital for these damages and a determination of Hospital's responsibility for comparative indemnity to Third Party Plaintiffs for any sums that they may be compelled to pay and for which Third Party Plaintiffs are determined responsible, entirely or in part.

19. Such a determination is necessary and appropriate at this time in order that Third Party Plaintiffs may ascertain their rights and duties with respect to Plaintiffs' claims for damages. Furthermore, the claim of Plaintiffs and the claim of Third Party Plaintiffs arise out of the same transaction, and determination of both in one proceeding is necessary and appropriate in order to avoid the multiplicity of actions that would result if Third Party Plaintiffs are required now to

defend against the claims of Plaintiffs and then bring a separate action against Hospital for indemnification of sums that they may be compelled to pay as the result of any damages, judgment, or other awards recovered by Plaintiffs against Third Party Plaintiffs.

Wherefore, Defendants and Third party Plaintiffs, COUNTY OF SONOMA, BILL COGBILL, in his individual capacity and in his official capacity as Sheriff for the COUNTY OF SONOMA, SONOMA COUNTY DEPUTY SHERIFF JOHN MISITA, and SONOMA COUNTY DEPUTY SHERIFF JIM RYAN prays judgment against SANTA ROSA MEMORIAL HOSPITAL as follows:

1. For a judicial determination of the comparative fault of Third Party Plaintiffs and Hospital for the damages claimed by Plaintiffs, if any;

2. For a declaration of the amount that Hospital is obligated to indemnify Third Party Plaintiffs if they are required to pay any sum as the result of any damages, judgment or other awards recovered by Plaintiffs against Third Party Plaintiffs;

3. For costs of suit herein incurred; and

4. For such other relief as the court may deem proper.

DATED: 8/4, 2008

GEARY, SHEA, O'DONNELL, GRATTAN & MITCHELL, PC

By: _____
STEVEN C. MITCHELL, ESQ.
Attorneys for County of Sonoma, County of Sonoma Sheriff's Department, Deputies Misita and Ryan and Sheriff Bill Cogbill

LAW OFFICES OF GEARY, SHEA, O'DONNELL GRATTAN & MITCHELL P.C.

- 7 -
Third Party Complaint